IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | )<br>)<br>) |
| Plaintiff, | ) CIVIL ACTION NO.<br>)<br>) **COMPLAINT**<br>) |
| v. | ) **JURY TRIAL DEMAND**<br>)<br>) |
| HUNTER AUTO & WRECKER SERVICE, INC., | )<br>) |
| Defendant. | )<br>) |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Sharon McInnis ("McInnis"), who was adversely affected by such practices. As alleged with greater particularity below, the Equal Employment Opportunity Commission alleges Defendant, Hunter Auto & Wrecker Service, Inc. ("Defendant"), subjected McInnis to a sexually hostile work environment on the basis of her sex, female, and constructively discharged McInnis in violation of Title VII.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of North Carolina.

PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant, a North Carolina corporation headquartered in Charlotte, North Carolina, has continuously been an employer doing business in the State of North Carolina and the City of Charlotte and has continuously had at least fifteen employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, McInnis filed a charge with the Commission alleging violations of Title VII by Defendant.

7. On February 14, 2019, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

9. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. On April 3, 2019, the Commission issued to Defendant a Notice of Failure of Conciliation.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. As described in greater detail below, from at least in or around March 2018 through August 28, 2018, Defendant engaged in unlawful employment practices at its Charlotte, North Carolina facility on North Davidson Street ("the Facility"), in violation of Section 703(a)(1) and 704(a) of Title VII, 42 U.S.C. 2000(e)-2(a)(1) and 2000e-3(a). Specifically, Defendant subjected McInnis to severe or pervasive sexual comments and conduct that created a sexually hostile work environment on the basis of her sex, female. The comments and conduct were unwelcome to McInnis and were committed by more than one male coworker.

13. McInnis began working for Defendant on or about February 11, 2018.

14. During her employment, McInnis worked in the office at the Facility.

15. Beginning in or around March 2018, at least one or more of McInnis' male coworkers ("male employees") made sexual comments toward McInnis or in her presence on a daily or almost daily basis.

16. The male employees' comments included, by way of example, telling McInnis she looked sexy and stating McInnis and a male coworker ("Coworker One") would have to take the afternoon off to go to McInnis' apartment and have sex.

17. Between March and April 2018, Coworker One, made comments at least twice a week suggesting he and McInnis go to her apartment for sex.

18. Coworker One also made comments suggesting he was in a relationship with McInnis. By way of example, on one occasion, when Coworker One saw McInnis speaking to another male outside of the Facility, Coworker One approached and told McInnis not to talk to the other male because she, McInnis, belonged to Coworker One.

19. Beginning in or around April 2018 and continuing through the rest of McInnis' employment, Coworker One made unwelcome sexually offensive comments to McInnis or in McInnis' presence every day or almost every day.

20. Other male employees made sexually offensive comments to or in the presence of McInnis, including comments implying they had previously had sex with McInnis. The sexual comments included, by way of example, comments about having been in McInnis's bed, having a "good time" together "last night," telling McInnis she looked "sexy," and asking McInnis what her boyfriend did to make her happy.

21. On at least one occasion, a male employee, Coworker Two rubbed McInnis' shoulders without her permission.

22. When Coworker Two attempted to rub McInnis' shoulders, he said McInnis was tense and he and McInnis would need to "work on this tonight."

23. Defendant's male employees engaged in other unwelcome sex-based behavior in McInnis' presence.

24. The sex-based behavior included, by way of example, pretending to "hump" each other to simulate sexual intercourse and frequently referring to each other as "a woman's vagina."

25. On several occasions, Defendant's male employees made negative comments to or in the presence of McInnis based on her sex. By way of example, the male employees said in

reference to McInnis and other females in the office, "lovely dispatchers" did not know how to do anything; and commented that a female co-worker did not know what she was talking about because the co-worker was female.

26. On at least one or more occasions in or around May 2018 and June 2018, McInnis complained to Defendant's Operations Manager and Vice President about the male employees' sexually offensive and harassing comments and/or conduct.

27. Defendant knew or should have known about the male employees' comments and/or conduct, including that of Coworkers One and Two, because the Operations Manager observed it.

28. Defendant knew or should have known about the male employees' comments and/or conduct, including that of Coworkers One and Two, because McInnis complained to management.

29. Defendant failed to take prompt and effective action to stop the sexual harassment of McInnis by the male employees.

30. When McInnis complained about the sexual comments and conduct, management told McInnis to let it go or ignore it, or management excused the behavior by stating that was just the way that some of Defendant's male employees were.

31. In or about June 29, 2018, McInnis became sick at work and was driven home by a male employee, Coworker Three.

32. After June 29, 2018, Coworker One made repeated sexual comments and innuendos about the fact that Coworker Three had driven McInnis home.

5

Case 3:19-cv-00295-FDW-DCK    Document 1    Filed 06/26/19    Page 5 of 8

33. After late June 2018 and continuing through the end of McInnis' employment in August 2018, McInnis became physically ill each time or almost each time she commuted to work.

34. In or around July or August 2018, McInnis told Defendant's Operations Manager that the work environment was negatively impacting her health.

35. In or around July or August 2018, Defendant's Operations Manager told McInnis that if the job had a negative effect on her health, then McInnis should resign.

36. On or about August 28, 2018, McInnis did not go to work.

37. On or about August 28, 2018, McInnis emailed the Operations Manager informing Defendant that she could no longer tolerate the sexually hostile work environment.

38. On or about August 28, 2018, McInnis resigned her employment.

39. Defendant subjected McInnis to sexual harassment that created a sexually hostile work environment, and McInnis was forced to resign as a result of the sexual harassment.

40. The effect of the practices complained of above has been to deprive McInnis of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex, female.

41. The unlawful employment practices complained of above were intentional.

42. The unlawful employment practices complained of above were done with malice or with reckless indifference to McInnis' federally protected rights.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, successors, assigns, and all persons in active concert or participation with them, from maintaining a sexually hostile environment and from all other employment practices that discriminate based on sex.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make McInnis whole, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to front pay.

D. Order Defendant to make McInnis whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of above, in amounts to be determined at trial.

E. Order Defendant to make McInnis whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional suffering, inconvenience, humiliation, loss of enjoyment of life, loss of civil rights, and other nonpecuniary losses in pain, in amounts to be determined at trial.

F. Order Defendant to pay McInnis punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted this the 26th day of June, 2019.

> EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
>
> JAMES L. LEE
> Deputy General Counsel
>
> GWENDOLYN YOUNG REAMS
> Associate General Counsel
> 131 M Street, NE
> Washington, D.C. 20507
>
> **/s/ Lynette Barnes**
> LYNETTE A. BARNES (NC Bar 19732)
> Regional Attorney
>
> **/s/ Ylda Kopka**
> YLDA MARISOL KOPKA
> (Ill. Bar No. 6286627)
> Supervisory Trial Attorney
> Charlotte District Office
> 129 W. Trade Street, Suite 400
> Charlotte, NC 28202
> Tel: (704) 954-6470
> ylda.kopka@eeoc.gov
>
> **/s/ Yolanda Brock**
> YOLANDA W. BROCK
> (N.C. Bar No. 36651)
> Senior Trial Attorney
> Charlotte District Office
> 129 W. Trade St., Suite 400
> Charlotte, NC 28202
> Tel: (704) 954-6463
> Fax: (704) 954-6412
> Email: yolanda.brock@eeoc.gov
>
> **ATTORNEYS FOR PLAINTIFF**